UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL B. FULLER, and KEVIN G. JOHNSON<br><br>Plaintiffs,<br><br>v.<br><br>KING COUNTY SUPERIOR COURT, *et al.*,<br><br>Defendants. | CASE NO. C07-628RSM<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING REMAINING DEFENDANTS |

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment. (Dkt. #68). Defendants the City of Seattle, the Seattle Police Department, and Police Chief Gil Kerlikowskie (the "City Defendants") argue that *pro se* Plaintiffs' allegations, which they construe as 42 U.S.C. § 1983 claims, fail as a matter of law because Plaintiffs cannot meet the requirements for municipal or supervisor liability under 42 U.S.C. § 1983. In addition, the City Defendants argue that the arrests of Plaintiffs which gave rise to the instant lawsuit were valid arrests, and that Plaintiffs have failed to provide any evidence to the contrary. Plaintiffs respond by requesting a continuance to conduct depositions to provide the Court with the requisite evidence to oppose the City Defendants' summary judgment motion. Plaintiffs do not otherwise address the merits of the City Defendants' arguments.

For the reasons set forth below, the Court GRANTS Defendants' Motion for Summary

MEMORANDUM ORDER
PAGE - 1

Judgment, and *sua sponte* DISMISSES all remaining Defendants in this action.

## II.  DISCUSSION

### A.  Procedural History

On April 25, 2007, *pro se* Plaintiff Michael Fuller ("Mr. Fuller") initiated this lawsuit by filing a motion to proceed in forma pauperis ("IFP") with this Court, and attached a complaint wherein he and co-plaintiff Kevin Johnson ("Mr. Johnson"), also appearing *pro se*, asserted a variety of claims for violations of their constitutional rights. (Dkt. #1). Although Mr. Johnson did not file an IFP application at that time, he submitted one on June 22, 2007. (Dkt. #12). The Court reviewed the IFP applications, advised both Plaintiffs on several occasions that their IFP applications were deficient, and consistently granted Plaintiffs additional time to correct their deficiencies. Eventually, Plaintiffs submitted complete IFP applications, and the Court granted IFP status to Mr. Fuller and Mr. Johnson. Moreover, Plaintiffs' amended complaint filed in this Court on May 3, 2007 became the operative complaint in this lawsuit.[1] (Dkt. #15, Amended Compl.).

In their 46-page amended complaint, Plaintiffs allege a variety of vague and general constitutional and civil rights violations committed by Defendants. The first 17 pages of Plaintiffs' complaint include a myriad of legal and historical conclusions which assert, among other things, that the State of Washington "is currently operating as a De Facto state that has never been formerly admitted to the United States" (*Id.* at 4), and that the conduct of "George W. Bush as Executive of the United States of America . . . is in violation of both the Constitution for the United States of America and Emancipation Proclamation of 1863[.]" (*Id.* at 4-5). Plaintiffs further indicate that beginning in June of 2000, and until the present time, all Defendants have caused Plaintiffs "to be arrested without a warrant." (*Id.* at 30). Plaintiffs also

---

[1] Consistent with this District Court's policy, the Honorable Monica J. Benton ("Judge Benton"), United States Magistrate Judge, initially reviewed the IFP applications. Judge Benton granted Mr. Fuller IFP status on July 6, 2007. (Dkt. #14). The case was eventually referred back to the undersigned Judge before Judge Benton made a ruling with respect to Mr. Johnson's IFP application. Accordingly, the undersigned Judge granted Mr. Johnson IFP status on March 18, 2008. (Dkt. #53).

allege that Defendants have maintained custody over Plaintiffs "for varying number of days over various time[s] over the last seven (7) years," and that Mr. Johnson "is facing imminent incarceration at the hands of the Defendant City of Seattle Police." (*Id.*). Plaintiffs claim that they "have suffered damages in various amounts for each defendant as to be determined at the time of trial but such amount shall not be less than $100,000,000,000.00 for the claims against the Executive of the United States of America." (*Id.* at 41). Plaintiffs later claim that they have "suffered damages in the amount of at least $10,000,000.00 dollars for loss liberty [sic], property, voting rights, being shackled in iron manacles, [and] forced labor for below minimum wages[.]" (*Id.* at 42).

Plaintiffs listed the following parties as Defendants to this action in the caption of their complaint: George W. Bush; King County Superior Court; Chief Judge Michael Trickey ("Judge Trickey"), the King County Sheriff; the City Defendants (the City of Seattle, the Seattle Police Department, and Police Chief Gil Kerlikowskie); and "any other John or Jane Doe who may be responsible for the violation[s] . . . contained herein." (*Id*. at 1-2). Plaintiffs also named a substantial number of additional defendants in the body of their amended complaint, including several local and state politicians, numerous other public servants, attorneys, a bank, and a nonprofit organization. (*Id.* at 24-29; 34-37). Additionally, the amended complaint includes Margaret Richard ("Ms. Richard") as a *pro se* Plaintiff. (*Id.* at 19). Ms. Richard is also noticeably absent from the caption of the amended complaint.

Plaintiffs proceeded to file several baseless motions in this case, including a motion for a temporary restraining order and preliminary injunction, a motion to reinstate cases filed in this district by Plaintiffs that were all previously dismissed, and a motion to remove state cases to this Court. All motions were denied at various times over the course of the last four months by this Court. During this time, the Court also *sua sponte* dismissed George W. Bush as a defendant to this action on the grounds that he was entitled to absolute immunity from a civil action as President of the United States. (Dkt. #61). Notably, the Court also issued a minute order to show cause on April 17, 2008, asking Plaintiffs why the instant action should not be dismissed for failure to comply with this Court's order requiring the parties to submit a Joint

MEMORANDUM ORDER
PAGE - 3

1  Status Report by February 27, 2008. (Dkt. #64). Plaintiffs did not file a joint response, but

2  instead filed separate responses to this Court's Order. (Dkts. #66 and #67). Mr. Johnson

3  indicated that he was unable to engage in any discovery or otherwise complete a Joint Status

4  Report because he is currently incarcerated. Mr. Fuller responded by moving once again for a

5  preliminary injunction pursuant to Fed. R. Civ. P. 65. The Court nevertheless construed Mr.

6  Fuller's pleading as a response to this Court's minute order to show cause.

7        Eventually, the City Defendants brought the instant motion for summary judgment on

8  May 13, 2008. (Dkt. #68). Plaintiffs once again did not file a joint pleading in response to the

9  summary judgment motion. Rather, Mr. Johnson filed a motion to continue on May 30, 2008

10 (Dkt. #72), wherein he requested additional time to conduct discovery due to his incarceration.

11 Meanwhile, Mr. Fuller filed a separate pleading entitled "Motion for Summary Dismissal of

12 Claims Violation of R.P.C., Due Process, Equal Protection" (Dkt. #75) on June 5, 2008. In this

13 pleading, which the Court construes as an opposition to the City Defendants' summary

14 judgment motion, Mr. Fuller also requests a continuance based on a desire to conduct discovery

15 in this case.

16       The Court also notes that Mr. Fuller has recently filed several other documents in this

17 Court, including a notice of intent to file a complaint of judicial misconduct (Dkt. #77), a

18 motion to compel (Dkt. #78), and a request for all qualified individuals to preside as an Article

19 III judge in this case (Dkt. #79). Mr. Fuller also filed an opposition to the City Defendants'

20 motion for summary judgment on June 30, 2008. However, the City Defendants' motion was

21 noted for June 13, 2008.

22       The Court now turns to the specific facts that allegedly gave rise to this lawsuit.

23     **B.**    **Background Facts**

24       Although not entirely clear from the amended complaint, Plaintiffs' lawsuit seemingly

25 stems from three separate arrests made by the Seattle Police Department. Two of the arrests

26 involved Mr. Johnson, and one of the arrests involved Mr. Fuller. The first arrest of Mr.

27 Johnson occurred on May 26, 2004. (Dkt. #69, Decl. of Mullenix, Ex. A, Seattle Police

28 Department Incident Report No. 04-212509). That morning, two Seattle Police Department

MEMORANDUM ORDER
PAGE - 4

officers responded to a domestic violence disturbance made by a female in the Central District of Seattle involving Mr. Johnson. (*Id.* at 3). After arriving on the scene and learning of the circumstances surrounding the domestic violence disturbance call, the officers determined that no allegations of assault were being made by the female. (*Id.*). However, the officers ran a computer check on Mr. Johnson and discovered that Mr. Johnson had two misdemeanor warrants, both for "third degree driving while license suspended." (*Id.*). The officers verified the warrants with their dispatcher and subsequently placed Mr. Johnson under arrest and booked him into the King County Jail. (*Id.*).

The second arrest involving Mr. Johnson occurred on December 15, 2004, when the Seattle Police Department conducted an eviction proceeding of a home in the Central District of Seattle. (*Id.*, Ex. B at 11). Mr. Johnson, who was present at the residence, was arrested pursuant to a warrant that was issued on December 10, 2004 for theft and forgery. (*Id.*). The warrant was issued because Mr. Johnson had attempted to record deeds in King County using a false check. (*Id.* at 10).

The arrest involving Mr. Fuller occurred on September 13, 2005. (*Id.*, Ex. C at 14). On that date, two Seattle Police Department officers responded to a complaint made by a building contractor who alleged that Mr. Fuller had been "screaming verbal abuse" at the building contractor and the employees who were working for him. (*Id.*). The police report indicates that Mr. Fuller yelled words to the effect of:

> European settler white racists, I can see right through you! [Expletive], I'm going to tear down that building! I'm gonna tear down that building just like what happened in New Orleans to the white man! You're a white punk!

(*Id.*).

Although Mr. Fuller had left by the time the officers had arrived, one of the officers subsequently encountered Mr. Fuller in front of his residence shortly after the officers had conducted their initial investigation of the building contractor's complaint. (*Id.*). Mr. Fuller proceeded to yell and berate the officer, and also tried to enter his residence when the officer indicated that he had to remain in front of his house because the building contractor was arriving to identify Mr. Fuller. (*Id.*). When Mr. Fuller did not comply, the police report indicates that

MEMORANDUM ORDER
PAGE - 5

1  the officer had to restrain the "the thrashing suspect" by placing him in handcuffs for officer

2  safety purposes. (*Id*. at 16). When the building contractor arrived, he made a positive

3  identification of Mr. Fuller as the suspect who was making the threats, and the officers

4  proceeded to arrest Mr. Fuller.

5        Notwithstanding the police incident reports, both Plaintiffs allege that Seattle Police

6  Department officers deprived them of their of their constitutional rights. Although Plaintiffs did

7  not provide any dates as to when these events occurred, Plaintiffs indicate that:

> City of Seattle police officers broke into plaintiffs' home in the early morning, routed their rooms, made plaintiff involuntarily leave his home, plaintiff Johnson was made to stand with guns putted [sic] at his head in his living room, and ransacked every room, emptying drawers, going into closets, tossing all plaintiff Johnson's possession [sic] into public streets, keeping for themselves, including his wallet containing over $2,000.00 and ripping legal papers and documents. [This complaint] further alleges plaintiff Fuller and Johnson were taken to the police station in iron manacle and then transported to the King County Audit and Juvenile Center and there detained on "open" known more commonly as "investigation" of a charge(s) for over 72 hours, however, in the detention they were not interrogated about anything and the first contact made again by the government was a Court Appointed Attorney from the King County Public Defender's Office, but was not taken before a magistrate, though one was accessible, that they were not permitted to call an attorney, unless one would accept collect calls, then plaintiffs were subsequently released without criminal charges being preferred against them. In fact, Plaintiff Johnson's case was dismissed with prejudice. Plaintiffs allege that the officers had no search warrant and no arrest warrant, and that they acted "under color of the statutes, ordinances, regulations, customs and usages" of Washington and of the City of Seattle and County of King.

(Dkt. #15, Am. Compl. at 38-39).

      Mr. Johnson further contends that he was wrongfully investigated for theft. (*Id*. at 40). Mr. Johnson specifically states:

> On December 14, 2004, plaintiff appeared in Superior Court of Washington as he had scheduled a 60(b) motion hearing regarding Garland E. Jackson in an alleged wrongful guardianship action. Plaintiff was transported from the King County Jail where he had been held on $50,000.00 bail for the "investigation" of Theft in the first degree, which charged [sic] allegedly stemmed from the fact that the alleged Court appointed guardian of Garland E. Jackson filed charges of theft on behalf of Garland E. Jackson. Plaintiff answered these allegations at a hearing on October 6, 2004 freely and without reservation on the witness stand and was found NOT guilty by Superior Court of Washington.

(*Id.* at 40-41).

      Other than these allegations, Plaintiffs do not otherwise provide any concrete facts or submit any evidence to indicate that any of the Defendants listed in the caption of their

MEMORANDUM ORDER
PAGE - 6

complaint, or those that were named in the body of their complaint, deprived Plaintiffs of their constitutional rights.

### C. Mr. Fuller's June 30, 2008 Response to the City Defendants' Motion

As an initial matter, the Court addresses Mr. Fuller's late response to the City Defendants' motion for summary judgement. (Dkt. #83). Pursuant to Local Rule CR 7(b)(2), "[e]ach party opposing the motion shall, within the time prescribed in CR 7(d), file with the clerk, and serve on each party that has appeared in the action, a brief in opposition to the motion, together with any supporting material[.]" Local Rule CR 7(d)(3) states that "[a]ny opposition papers shall be filed and served not later than the Monday before the noting date."

Here, the City Defendants' correctly noted their motion for Friday, June 13, 2008. It was the obligation of the Plaintiffs in this case to file any opposition to this motion by Monday, June 9, 2008. However, Mr. Fuller clearly did not reply to this motion until June 30, 2008, well past the original deadline set forth by the rules of this Court. And while the Court is sensitive to Mr. Fuller's status as a *pro se* plaintiff who may not be informed or experienced with the rules of the Court, the Court has previously notified both Plaintiffs of their obligations to comply with these rules. (*See* Dkt. #50 at 2). Therefore Mr. Fuller's response is STRICKEN AS MOOT. In any event, Mr. Fuller is not prejudiced by his failure to file a timely response for the reasons set forth below.

### D. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of

MEMORANDUM ORDER
PAGE - 7

summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citation omitted). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995).

### E.   Motions to Continue

The Court now addresses Mr. Johnson's motion to continue, and Mr. Fuller's pleading filed in response to the City Defendants' summary judgment motion, which the Court construes as a motion to continue. Federal Rule of Civil Procedure 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The Ninth Circuit has explained that "[t]o prevail under Fed. R. Civ. P. 56(f), parties opposing summary judgment must make (a) a timely application which (b) sufficiently identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004) (*quoting VISA Int'l Serv. Ass'n. v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)). Courts should grant Rule 56(f) motions if the nonmoving party has not had the opportunity to discover information essential to its opposition. *See, e.g., Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (finding that where "a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f)

MEMORANDUM ORDER
PAGE - 8

1  motion fairly freely").

2  However, the burden is on the party seeking additional discovery to proffer sufficient
3  facts to show that the evidence sought exists, and that it would prevent summary judgment.
4  *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001); *Nidds v. Schindler*
5  *Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996). Therefore a district court "does not abuse
6  its discretion by denying further discovery if [1] the movant has failed diligently to pursue
7  discovery in the past . . . or [2] if the movant fails to show how the information sought would
8  preclude summary judgment." *California Union Ins. Co. v. American Diversified Sav. Bank*,
9  914 F.2d 1271, 1278 (9th Cir. 1990) (citations omitted).

10  In the instant case, neither Mr. Johnson nor Mr. Fuller have adequately explained to the
11  Court, either through their briefing or by affidavit, how additional discovery would aid them in
12  their claims. Both Plaintiffs simply assert blanket statements indicating that additional discovery
13  is needed. (Dkts. #72 at 13; #75 at 2). However, a plaintiff "must make more clear what
14  information he is seeking and how it would preclude summary judgment." *Hall v. State of*
15  *Hawaii*, 791 F.2d 759, 761 (1986).

16  In addition, Plaintiffs do not provide any objective evidence to support these claims. For
17  example, Mr. Johnson indicates in his motion to continue that Defendants continue to deprive
18  him of his civil rights, despite that fact that he "has prevailed in 20 of the arrests made, if not
19  more, but for the discovery completion for the exact dates." (Dkt. #72 at 4). Mr. Johnson also
20  contends that he has "complained through all the formal processes required by state and local
21  regulations and laws to recover, report and complain about the unlawful, assaultive,
22  extortionary and unconstitutional conduct of its employees[.]" (*Id.* at 5). However, no evidence
23  is submitted that suggests that Mr. Johnson indeed complained through the proper formal
24  channels. Nor is there any evidence that reconciles Mr. Johnson's incarceration with his
25  allegations that he has "prevailed" in his arrests.

26  The Court will not simply rely on allegations that are not substantiated by any objective
27  evidence in support thereof. And simply because Mr. Johnson is currently incarcerated does not
28  have any bearing on his ability to provide this Court with particularized information that

MEMORANDUM ORDER
PAGE - 9

suggests how additional discovery will aid him in his case. In addition, Mr. Johnson's claimed hardship of obtaining the necessary evidence due to his incarceration is undermined by his co-plaintiff's ability to access such information, as Mr. Fuller is currently not incarcerated. Accordingly, the Court finds that the motions to continue shall not be granted, and additionally finds that this case is appropriate for summary disposition. *See Hall*, 791 F.2d at 761.

### F.     Plaintiffs' Claims Against the City Defendants

The City Defendants correctly characterize the allegations made upon them by Plaintiffs as claims brought pursuant to 42 U.S.C. § 1983. That statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.

To succeed on a section 1983 claim, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right. 42 U.S.C. § 1983; *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citing *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989)). A person deprives another of a constitutional right where that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act [which that person] is legally required to do that causes the deprivation of which [the] complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

When a plaintiff further makes allegations against a municipality under section 1983, the city policy must cause a constitutional violation. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting) (quoting *Monell*, 436 U.S. at 694). The *Monell* Court emphasized that:

> a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory . . .

MEMORANDUM ORDER
PAGE - 10

> Therefore . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 691 and 694 (emphasis in original); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 121 (U.S. 1992). Thus, the Court must first inquire whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385-386 (1989).

Similarly, the Ninth Circuit has explained that a policy is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (*per curiam*) (citations omitted). A policy can be one of action or inaction. *See City of Canton*, 489 U.S. at 388. Under *Canton*, a plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation. *Id.* at 387-89. To impose liability against a municipality for its failure to act, a plaintiff must show: (1) that a city (or other municipality) employee violated the plaintiff's constitutional rights; (2) that the city's customs or policies amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights. *Gibson v. County of Washoe*, 290 F.3d 1175, 1193-94 (9th Cir. 2002).

In this case, Plaintiffs' claims against the City of Seattle and the Seattle Police Department fall squarely within *Monell* and its progeny. However, Plaintiffs cannot provide the Court with any evidence to suggest that the allegations of improper conduct by either the City of Seattle or the Seattle Police Department have actually occurred. More importantly, Plaintiffs do not submit any evidence to suggest that either Defendant instituted an official municipal policy or custom that inflicted the injury that Plaintiffs allege. They simply complain that these defendants engaged in wrongful acts and conduct that have deprived them of their constitutional rights. In

MEMORANDUM ORDER
PAGE - 11

addition, Plaintiffs have not provided any evidence that contradicts the evidence submitted by the City Defendants, which include police reports that show that the arrests of both Mr. Johnson and Mr. Fuller were valid arrests. For example, the amended complaint states that Defendants have caused Plaintiffs "to be arrested without warrant." (Dkt. #15 at 30). However, the police reports clearly indicate that there were valid warrants out for Mr. Johnson's arrest when Seattle Police Department officers arrested Mr. Johnson. (Dkt. #69, Exs. A and B). And to the extent that Mr. Fuller alleges he was arrested without warrant, the police report regarding his arrest clearly establishes that no warrant was needed under the circumstances of his arrest. (*Id.*, Ex. C). Under these circumstances, the Court ultimately cannot find that the conduct of the City of Seattle or the Seattle Police Department rises to the level of municipal liability under section 1983.

With respect to Plaintiffs' claims against Chief Gil Kerlikowskie, "[t]he law clearly allows actions against supervisors under section 1983[.]" *Redman v. City of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991). A police chief is liable as a supervisor under section 1983 if (1) he was personally involved in the constitutional deprivation, or (2) there exists a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Mackinney v. Neilsen*, 69 F.3d 1002, 1008 (9th Cir. 1995) (citations omitted). "Supervisor liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. City of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (internal quotations omitted).

Here, Plaintiffs' amended complaint alleges that Chief Gil Kerlikowskie "is being sued in his official capacity as well as his individual capacity for act [sic] committed under the color of law and deprived plaintiff of his liberty on a variety of occasions." (Dkt. #15 at 23). Mr. Johnson further alleges that "Police Chief Gil Kerlikowskie owed a duty to plaintiff to assure that only persons of good moral character were maintained on the police force." (Dkt. #72 at 5). However, these bald allegations once again fall short of raising a genuine issue of material fact. Plaintiffs offer no objective evidence in any of their pleadings that suggest that Chief Gil

MEMORANDUM ORDER
PAGE - 12

1  Kerlikowskie was either directly involved in a constitutional deprivation, or that there was a
2  causal connection between his conduct and the alleged constitutional violation. Naked
3  allegations simply do not suffice. Accordingly, Plaintiffs' claims against the City Defendants
4  shall be dismissed.

**G.    Plaintiffs' Claims Against King County Superior Court, Judge Trickey, the King County Sheriff, and all other Defendants named in the Amended Complaint**

Pursuant to the provisions of 28 U.S.C. § 1915, this Court has the authority to "dismiss the case *at any time* [if] the court determines that . . . the action or appeal - (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (emphasis added). A district court has broad discretion to manage IFP cases. *Clark v. Ga. Pardons and Paroles Bd.*, 915 F.2d 636, 639 (11th Cir. 1990). Furthermore, a district court entertaining an IFP complaint specifically has broad discretion to determine whether such complaint is frivolous. *See Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[W]e are confident that the district courts, who are 'all too familiar' with factually frivolous claims . . . are in the best position to determine which cases fall into this category.") (internal citation omitted). A lawsuit is frivolous if the claims lack an arguable basis in law due to either *factual* or *legal* inadequacies. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (emphasis added).

A factual allegation is frivolous for purposes of section 1915 when it is "clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional." *Denton*, 504 U.S. at 32-33 (internal quotations omitted). "Clearly baseless" claims also include unsupported conclusory factual allegations that provide no supporting operative facts in support of the constitutional violations alleged by a plaintiff. *See Phillips*, 746 F.2d at 785. On the other hand, a legal allegation is frivolous if it is "undisputably meritless." *Neitzke*, 490 U.S. at 329. A section 1915 dismissal based on a frivolous legal allegation is appropriate, for example, if an affirmative defense such as absolute immunity would defeat the action. *Clark*, 915 F.2d at 640.

In the instant case, Plaintiffs' claims are both factually and legally inadequate. As indicated repeatedly above, Plaintiffs' assert a myriad of constitutional violations, but do not

MEMORANDUM ORDER
PAGE - 13

offer any objective evidence in support of the alleged violations. Not a single "operative fact" is submitted by Plaintiffs' in any of their filings with the Court. Indeed, what is submitted by Mr. Fuller in his motion to continue is a series of newspaper clippings about slavery, political scandals, and violations of human rights that have no direct correlation to Plaintiffs' claims. (Dkt. #75 at 25-30). Mr. Fuller also submits a copy of the Emancipation Proclamation of 1863. (*Id.* at 23). Certainly this is what the *Denton* court envisioned when it was concerned about allegations that were "fanciful, fantastic, and delusional." *Denton*, 504 U.S. at 32-33.

In addition, Plaintiffs' claims against King County Superior Court, Judge Trickey, and any other judge that Plaintiffs contend in the body of their complaint are defendants to this action are legally inadequate because those individuals are entitled to judicial immunity. It is well-established that judges enjoy a comparatively sweeping form of absolute immunity. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Forrester v. White*, 484 U.S. 219, 225 (1988). Judicial immunity is an immunity from suit, not just from the ultimate assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine has been adopted by federal courts to bar civil suits for money damages under section 1983 against judicial officers for alleged constitutional violations. *See* 28 U.S.C. § 1915A(d); *see also Pierson v. Ray*, 386 U.S. 547 (1967). "This immunity applies even when the judge is accused of acting maliciously and corruptly." *Id.* at 554.

Here, Plaintiffs' allegations specifically indicate that the "court is being sued in its official capacity and those judges have declared to have acted without authority in their individual capacity, all of whom have ignored or refused to act against those known to violate the constitutional and civil rights of the citizens and person[s] subject to the jurisdiction of the constitution[.]" (*Id.* at 22). But as established above, judges are immune from liability for conduct arising out of their official roles as judges. Therefore in this case, it is clear that judicial immunity applies with respect to any judge that is a named defendant to this case, and Plaintiffs

MEMORANDUM ORDER
PAGE - 14

have not offered any evidence or made any allegation to suggest otherwise.[2]

Lastly, the Court notes that "[I]n determining whether the [plaintiff's] complaint was frivolous or malicious, it [is] proper for the District Court to consider its own records and files." *Williams v. Field*, 394 F.2d 329, 332 (1968). In this case, the numerous pleadings filed by both Plaintiffs provide further support that neither one of them have filed a meritorious or otherwise legitimate pleading in this Court. As mentioned above, Plaintiffs have filed several baseless motions, all of which have been denied. Among the more notable motions filed by Plaintiffs include a motion to reinitiate previous civil rights complaints brought in this district that were all previously dismissed. Plaintiffs also filed a vague and conclusory motion for temporary restraining order and preliminary injunction seeking the ability to freely move around the King County Courthouse, and preventing a number of individuals from asserting a property interest in the Central District home where Mr. Johnson was arrested.

Furthermore, there is no indication that Plaintiffs intend to stop. Mr. Fuller has filed a notice of intent to file a complaint on several more judges in the Washington State Court system and federal judges in this District Court. In addition, Mr. Fuller has filed general requests upon members of the public to sit as Article III judges. Mr. Fuller has also filed another motion for a temporary restraining order and preliminary injunction.

Overall, while this Court is sensitive to giving *pro se* plaintiffs their day in Court, it will not promote the continual and consistent waste of judicial resources. Simply because one is indigent does not mean there is a constitutional right to the expenditure of public funds and the valuable time of the federal courts to prosecute an action that is totally without merit. *Collins v. Cundy*, 603 F.2d 825, 828 (10th Cir. 1979). A pauper's affidavit should not be a broad highway into the federal courts. *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). There is no

---

[2] Even if Plaintiffs' claims against King County Superior Court, Judge Trickey, and any other judge in that court were somehow not legally inadequate under the "frivolousness" standard set forth in 28 U.S.C. § 1915(e)(2)(B)(i), it is clear that the statutory language of 28 U.S.C. § 1915(e)(2)(B)(iii) would bar Plaintiffs' claims as well. That section allows Courts to dismiss IFP complaints if the Court determines that the complaint "seeks monetary relief against a defendant who is immune from such relief." *Id.*

1  doubt that Plaintiffs' allegations are "clearly baseless," and the Court will not allow Plaintiffs to
2  pursue their meritless claims any further.  Accordingly, Plaintiffs' claims against King County
3  Superior Court, Judge Trickey, the King County Sheriff, shall be dismissed.

### H.     Dismissal With or Without Prejudice

5  The IFP statute does not specify whether dismissals under that statute should be with or
6  without prejudice.  *See* 28 U.S.C. § 1915(e)(2).  Courts have construed this silence to mean that
7  Congress intended to leave this decision to the court's discretion.  *See Tripati v. First National*
8  *Bank*, 821 F.3d 1368, 1370 (9th Cir. 1987); *Smith-Bey v. Hospital Adm'r*, 841 F.2d 751, 756
9  (7th Cir. 1988); *Lay v. Justices-Middle District Court*, 811 F.2d 285, 286 (5th Cir. 1987).
10 However, courts suggest that Congress did not intend a dismissal of an IFP complaint as
11 frivolous to operate as a dismissal with prejudice.  *Nagy v. FMC Butner*, 376 F.3d 252, 258 (4th
12 Cir. 2004); *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 775 (7th Cir. 2002).  Indeed, the
13 Supreme Court held that "because a § [1915(e)(2)(B)] dismissal is not a dismissal on the merits,
14 but rather an exercise of the court's discretion under the *in forma pauperis statute*, the dismissal
15 does not prejudice the filing of a paid complaint making the same allegations." *Denton v.*
16 *Hernandez*, *supra*, 504 U.S. at 34 (emphasis in original).

17 This Court agrees with this line of reasoning.  This Court is *sua sponte* dismissing
18 Plaintiffs' claims against King County Superior Court, Judge Trickey, the King County Sheriff,
19 and any other defendant named in the body of Plaintiffs' amended complaint under its
20 discretionary power to do so under 28 U.S.C. § 1915(e)(2)(B).  Therefore, Plaintiffs' claims with
21 respect to those Defendants shall be without prejudice.  As *Denton* indicates, Plaintiffs remain
22 free to file a paid complaint with these same allegations as to these Defendants.

23 With respect to Plaintiffs' claims against the City Defendants, the Court has dismissed
24 those claims pursuant to the City Defendants' motion for summary judgment, and not *sua*
25 *sponte*.  Therefore because the Court finds no genuine issue of material fact has been raised as to
26 those claims, Plaintiffs' claims against the City Defendants shall be dismissed with prejudice.

### III.  CONCLUSION

28 Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,

MEMORANDUM ORDER
PAGE - 16

and the remainder of the record, the Court hereby finds and orders:

(1) Plaintiff Kevin G. Johnson's Motion for Continuance (Dkt. #72), and Plaintiff Michael B. Fuller's Motion (Dkt. #75), which the Court construes as a motion to continue, are both DENIED.

(2) Defendants' Motion for Summary Judgment (Dkt. #68) is GRANTED. Additionally, all remaining Defendants shall be DISMISSED. Plaintiffs' lawsuit shall be dismissed with prejudice as to the City Defendants, and without prejudice as to all other Defendants named in Plaintiffs' amended complaint for the reasons mentioned above.

(3) All pending motions remaining on the docket are STRICKEN AS MOOT.

(4) The Clerk is directed to forward a copy of this Order to all counsel of record, and to *pro se* Plaintiff Kevin G. Johnson at <u>Stafford Creek Corrections Center, H-2 A-26-U, 191 Constantine Way, Aberdeen, WA 98520</u>, and to *pro se* Plaintiff Michael B. Fuller at <u>427 20th Ave, Seattle, WA 98122</u>.

DATED this 3rd day of July, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE